UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEVARREO KELLEY-LOMAX,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF CHICAGO, ROBERTO GARDUNO, ANTHONY SPICUZZA, and GEORGE DAVROS,<br><br>    Defendants. | No. 20 CV 04595<br><br>Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

Defendants Chicago Police Officers Roberto Garduno, Anthony Spicuzza, and George Davros responded to a 911 call about a group of men brandishing guns at a gas station. When they arrived, the defendants saw four men who partially resembled the caller's description sitting in an SUV. Plaintiff Jevarreo Kelley-Lomax was in the passenger seat, under which defendants later found a loaded gun. They arrested Kelley-Lomax for possessing a gun without a license. Defendants allegedly lied about the circumstances surrounding the arrest in their reports and when testifying before the grand jury. Kelley-Lomax was indicted but subsequently found not guilty for lack of evidence. Kelly-Lomax brought this case for false arrest and malicious prosecution. Defendants move for summary judgment.

I.     **Legal Standards**

Summary judgment is warranted if there are no genuine disputes of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "'Material facts' are facts that 'might affect the outcome of the suit,' and a dispute as

to those facts is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Hunter v. Mueske*, 73 F.4th 561, 565 (7th Cir. 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A court need consider only the cited materials, but it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The non-moving party is given "the benefit of conflicting evidence and any favorable inferences that might be reasonably drawn from the evidence." *Runkel v. City of Springfield*, 51 F.4th 736, 741 (7th Cir. 2022).

## II. Facts

In February 2019, plaintiff Jevarreo Kelley-Lomax was arrested by defendants Roberto Garduno, Anthony Spicuzza, and George Davros, at a Shell gas station on the South Side of Chicago. [116] ¶¶ 1–2.[1] Defendants arrested Kelley-Lomax without an arrest warrant and without the belief that a warrant was outstanding for his arrest. [132] ¶ 3.

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except in the case of citations to transcripts, which use the transcript's original page number. When a document has numbered paragraphs, I cite to the paragraph, for example [1] ¶ 1. The facts are largely taken from Kelley-Lomax's response to defendant's Local Rule 56.1 statement, [116], and defendant's response to Kelley-Lomax's 56.1 statement of additional facts, [132], where both the asserted fact and the opposing party's response are set forth in one document. Any fact not properly controverted is admitted. N.D. Ill. Local R. 56.1(e)(3); *see Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). I disregard all immaterial facts. *See* [116] ¶¶ 28, 31–33; [132] ¶¶ 10–11. I also ignore facts included in statements or responses that are not supported by the parties' cited evidence. N.D. Ill. Local R. 56.1(d)(2), (e)(3); *see* [116] ¶ 14, 28. Defendant's objections to statements including the wrong defendant in the facts are sustained. [132] ¶¶ 2–3, 17, 25. General objections to how facts are characterized, *see* [116] ¶¶ 4, 8, 23, 25; [132] ¶¶ 8, 20, 27, 30, 32–33, 36–37, 39, are sustained and I omit the characterizations and rely on the underlying evidence when possible. Where the parties dispute facts and both rely on admissible evidence, I set forth both sides' facts.

A 911 caller reported that he had seen about "5 to 12, maybe like 10 guys," all African American males, standing around a truck "at pump 6 at the Shell gas station," and "[t]hey just upped about two or three guns at this car." [132] ¶ 4. The caller described one of the armed men as wearing a "black coat . . . with the stripe around [it]." [132] ¶ 5. In a follow up call, the caller further described the armed man as wearing "a black coat with a ring around the coat," and "a black puffy coat with like a colored ring around, maybe red or something like that." [132] ¶ 9. The caller said he thought the truck was "brown or an orange color" with "a lot of guys right there." [132] ¶ 8.

The dispatcher broadcasted that "males were standing at pump #6 and pointed two guns at the caller's vehicle." [116] ¶ 6. The dispatcher advised defendants that one of the armed individuals was an African American male wearing a black coat with stripes. [116] ¶ 7.

When Garduno and Spicuzza arrived at the Shell station, they did not see anyone at pump #6. [132] ¶ 12. A blue SUV was at pump #5 with four occupants, including Kelley-Lomax. [132] ¶ 13. Pumps #5 and #6 were immediately adjacent to each other. [116] ¶ 11. All four of the SUV's occupants were African American. [132] ¶ 14. Kelley-Lomax was wearing an open, black, hooded sweatshirt with a white shirt visible under it. [132] ¶ 15. Two other men wore black, hooded sweatshirts, and the fourth man wore a blue jacket with red and white stripes on the sleeves. [132] ¶ 14.

Garduno and Spicuzza approached the SUV, ordered the four men to get out, and handcuffed them. [116] ¶ 14–15. Davros arrived on the scene and began to assist.

3

[116] ¶ 17. Kelley-Lomax had been seated in the front passenger seat when the officers arrived. [116] ¶ 18. Davros searched the car and when kneeling to look under the passenger seat, saw a gun. [132] ¶ 18. The gun was not visible without looking under the seat. [132] ¶ 19. A soda bottle and chip bag were also under the seat behind and to the side of the gun. [116] ¶ 25.

While at the Shell station, defendants learned that Isaiah Kelley-Hawkins, who was present at the scene in another vehicle, had rented the SUV in which the gun was found. [132] ¶ 21. After speaking with Kelley-Hawkins, Garduno and another officer speculated that Kelley-Hawkins, who had a Firearm Owners Identification Card, owned the gun. [132] ¶ 22.

Garduno asked Kelley-Lomax if he had a Firearm Owners Identification Card or a Concealed Carry License. [116] ¶ 29. Kelley-Lomax responded he did not. *Id.* Garduno placed Kelley-Lomax under arrest for aggravated unlawful use of a weapon, 720 ILCS 5/24-1.6(a)(1), which makes it unlawful for a person to possess a gun on or about his person or in any vehicle. [116] ¶¶ 2, 30.

Garduno and Spicuzza wrote the "incident narrative" section of the Arrest Report together. [132] ¶ 23. The narrative stated, "caller related description of offenders are male balck [sic] wearing a black jacket. The second offender was a male balck [sic] and had a black jacket with a stripe." [132] ¶ 24.

Garduno and Spicuzza also prepared the narrative section of the Original Case Incident Report, which stated that reporting officers "requested a call back to victim . . . with negative results." [132] ¶ 25. The report also stated that reporting

4

officers "spoke to clerk at gas station . . . who related to [reporting officers] that she does not have access to security camera." [132] ¶ 26. Spicuzza did not review, and Garduno does not recall whether he reviewed, the gas station's security camera footage on the night of Kelley-Lomax's arrest. [132] ¶ 27.

Spicuzza returned the next day to view the security footage. [132] ¶ 28. Spicuzza saw the SUV driving around in circles at the gas station from pump #6 to pump #5. [132] ¶ 29. Garduno recalls seeing this footage as well. [132] ¶ 36. Neither Spicuzza nor Garduno recalled whether they saw anyone pointing a gun in the video. [132] ¶ 30.

Spicuzza was unable to retrieve the video, so he attempted to record the video using his body-worn camera. [132] ¶¶ 28, 31. He does not know what happened to that recording, has not done anything to try to recover it, and defense counsel was unable to locate this video. [132] ¶ 31. Spicuzza does not recall whether he spoke to a prosecutor or anyone at the State's Attorney's office about the surveillance video. [132] ¶ 32. Spicuzza "probably should have" made a supplement written report regarding the video footage, but he did not. [132] ¶ 33.

Garduno was the only witness to testify before the grand jury. [132] ¶ 34. He testified that two of the car occupants fit the physical and clothing description given by the 911 caller. *Id*. He said that the SUV matched the 911 caller's description of the armed individuals' truck. [110-1] at 5:2–4. He also said that his "investigation reveal[ed] that depicted on the video surveillance system are subjects from the vehicle at pump six getting out of the vehicle with handguns and pointing them in the

5

direction of 87th Street and a Range Rover that [was] driving by," and "one of the subjects armed with a handgun [was] wearing a jacket with stripes." [132] ¶ 35.

Garduno was again the only witness at Kelley-Lomax's trial. [132] ¶ 39. He testified that two of the car occupants, "one in the passenger seat, one in the rear, both . . . matched the description provided . . . by the [911] caller." [107-8] at 8:18–22. He identified Kelley-Lomax as the occupant sitting in the passenger seat. [107-8] at 9:5–18. After the state presented Garduno's testimony, the judge granted Kelley-Lomax's motion for a directed finding of not guilty. [132] ¶ 40.

### III. Analysis

#### A. Section 1983 Fourth Amendment False Arrest

"To state a claim under the Fourth Amendment, a plaintiff must show that a search or seizure occurred and that the search or seizure was unreasonable." *Hess v. Garcia*, 72 F.4th 753, 761 (7th Cir. 2023). Warrantless seizures are *per se* unreasonable unless they fall within an exception, such as when an officer has probable cause to believe that the suspect committed a crime in the officer's presence. *See Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013); *District of Columbia v. Wesby*, 583 U.S. 48, 56 (2018) (discussing probable cause exception to warrant requirement for arrest). Probable cause is an absolute defense to claims of wrongful or false arrest under the Fourth Amendment in 42 U.S.C. § 1983 suits. *Braun v. Vill. of Palatine*, 56 F.4th 542, 548 (7th Cir. 2022).

An officer has probable cause to arrest an individual when "the facts and circumstances that are known to the officer reasonably support a belief that the individual has committed, is committing, or is about to commit a crime." *Id*. This is a

6

"common-sense inquiry requiring only a probability of criminal activity." *Id*. Probable cause exists when "an officer . . . has enough information to warrant a prudent person to believe criminal conduct has occurred." *Id*.

Generally, a jury determines whether an arrest was supported by probable cause in § 1983 false arrest cases. *Madero v. McGuinness*, 97 F.4th 516, 522 (7th Cir. 2024) (citing *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013)). But when the underlying facts are undisputed, a court can make that decision on summary judgment. *Id*.

Kelley-Lomax's theory of false arrest is that defendants did not have probable cause to arrest him for unlawfully possessing a firearm.[2] [126] at 7. He argues that the officers could not have reasonably believed that Kelley-Lomax had possession of the gun under the statute. [126] at 9–11. A individual has constructive possession of a firearm when they have "knowledge of the presence of the weapon and exercise[] immediate and exclusive control over the area where the firearm is found." *People v. Brown*, 2020 IL 124100, ¶ 11. According to Kelley-Lomax, defendants could not have reasonably believed that Kelley-Lomax knew about the gun because it was not easily visible under the seat, there was no evidence that Kelley-Lomax had placed the gun there, and he did not have exclusive control over the area. [126] at 10–12.

But probable cause "does not require evidence sufficient to support a conviction, or even evidence demonstrating that it is more likely than not that the

---

[2] Kelley-Lomax does not challenge whether the officers had probable cause to search the car, [126] at 7, or had the requisite suspicion to detain him before finding the gun.

7

suspect committed a crime. So long as the totality of the circumstances, viewed in a common sense manner, reveals a probability or substantial chance of criminal activity on the suspect's part, probable cause exists." *United States v. Mounts,* 248 F.3d 712, 715 (7th Cir. 2001) (internal citations omitted).

Kelley-Lomax does not dispute that the gun was found under the passenger seat and that he was the passenger. [116] ¶¶ 18, 21, 34. The gun was therefore in a space accessible to him, within inches. A reasonable officer could conclude that Kelley-Lomax probably knew that the gun was under his seat.

There was also a soda bottle and a chip bag behind and to the side of the gun. [116] ¶¶ 26–27. The parties dispute whether this trash would have made it impossible for someone in the back seat to place the gun under the passenger seat without the passenger's knowledge. [116] ¶¶ 26–27. Even if the rear of the seat was not obstructed, a reasonable officer could still assume that Kelley-Lomax at least had joint possession of the gun. *See Young v. City of Chicago*, 987 F.3d 641, 645 (7th Cir. 2021) ("The exclusive dominion and control required to establish constructive possession is not diminished by evidence of others' access to the contraband. When the relationship of others to the contraband is sufficiently close to constitute possession, the result is not vindication of the defendant, but rather a situation of joint possession."). Kelley-Lomax also argues that the orientation of the gun suggests that it was placed from the back of the seat. [126] at 12. But the gun's orientation does not undermine the other facts that reasonably support a belief that Kelley-Lomax possessed the gun—it was within reach and he had just been sitting on top of

8

it. Although competing inferences could be drawn about how the gun got there, they are not so compelling that an officer on the scene would be required to reject the probability that Kelley-Lomax shared responsibility for it; there's no evidence that it would be physically impossible for the passenger to toss a gun under the seat and have it fall in the position as seen by Davros. *See Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 745–46 (7th Cir. 2003) (it is not the function of the police to establish guilt; officers may leave it to the courts and prosecutors to sort out conflicting evidence).

Kelley-Lomax's appearance did not match the 911 caller's description of the individual brandishing the gun. The 911 caller said the armed man wore a puffy black coat with a colorful, potentially red, stripe around it, while Kelley-Lomax was in an unzipped black hoodie with a white shirt underneath. [132] ¶¶ 5, 9, 15. Those discrepancies would be material to whether the officers had probable cause to search the car, or whether officers could reasonably believe that Kelley-Lomax was one of the individuals who pointed the gun at the 911 caller's car. But Kelley-Lomax does not challenge the constitutionality of the search. [126] at 7. And the officers arrested Kelley-Lomax for unlawful use, i.e. possession, of the gun, not for pointing the gun at the caller's car. [116] ¶¶ 2, 30. After searching the car and finding the gun under his seat, the officers had probable cause to arrest Kelley-Lomax for unlawful use of a gun regardless of the 911 call.

Kelley-Lomax also cites to evidence that the officers speculated that Kelley-Hawkins owned the gun and therefore the officers knew Kelley-Lomax did not possess

9

the gun. [126] at 4. But who owned the gun is irrelevant to the issue of whether officers could reasonably believe Kelley-Lomax possessed the gun at the time of the arrest. While Kelley-Hawkins may have owned the gun, when the officers arrived, he was in another car and was not in physical proximity to the gun. [132] ¶ 21. In that moment, an officer could reasonably believe that Kelley-Lomax had constructive possession of the gun, even if there was joint possession. *See Young*, 987 F.3d at 645.

Applying the common-sense standard, the undisputed facts show that the officers had probable cause to arrest Kelley-Lomax for aggravated unlawful use of a weapon, 720 ILCS 5/24-1.6(a)(1). Defendants' motion for summary judgment on Kelley-Lomax's false arrest claim is granted.[3]

To the extent Kelley-Lomax brings a failure to intervene claim, defendants are also entitled to summary judgment. Failure-to-intervene claims require a showing that a plaintiff's constitutional rights were violated. *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). Kelley-Lomax cannot make that showing here. The undisputed facts show officers had probable cause to arrest him. No reasonable jury could find defendants violated Kelley-Lomax's constitutional rights—defendants' motion for summary judgment on any failure to intervene claim is granted.

---

[3] Even if defendants did not have probable cause to arrest Kelley-Lomax, they would have qualified immunity because they had arguable probable cause. Qualified immunity shields officers from liability if "a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law." *Mwangangi v. Nielsen*, 48 F.4th 816, 825 (7th Cir. 2022) (explaining "arguable probable cause"). To the extent there is some room for debate, the officers at worst were reasonably mistaken that Kelley-Lomax had access to and knowledge of the gun because it was under his seat.

B.   **Malicious Prosecution Claims**

Kelley-Lomax presents evidence that defendants lied in their reports, grand trial testimony, and trial testimony. The incident report stated that the defendants requested a call back to the 911 caller, which was unsuccessful. [132] ¶ 25. But dispatch did reach the caller, and he provided further information in the second call. [115-4] at 2. The arrest report states that the 911 caller provided a description of two armed men, but the caller only described one individual with any specificity. [132] ¶ 24; [115-2] at 2; [115-4] at 2. The arrest report also suggested that a black jacket alone fit the 911 caller's description, tracking Kelley-Lomax's black hoodie. But that hoodie was not a puffy coat with "a colored ring around [it], maybe red" as described by the caller. [132] ¶¶ 24; [115-2] at 2; [115-4] at 2.

Garduno's grand jury testimony also contradicts the reports and 911 calls. His testimony about the surveillance footage significantly differed from Spicuzza's description of it. [132] ¶¶ 29–30, 34–37. Garduno said that the video depicted the SUV occupants get out of the vehicle and point guns at a passing car. [110-1] at 4:2–7. Spicuzza only remembered seeing the car drive around the gas station, and the occupants occasionally getting out of the car and taking pictures. [107-4] at 49:19–56:10. Garduno also testified that the SUV matched the 911 caller's description, but the caller had described a brown or orange truck and the SUV was blue. [110-1] at 5:2–4; [132] ¶¶ 8, 13. He also stated that two occupants fit the caller's clothing description when none wore a black coat with a colored ring or stripe around it. [110-1] at 5:8–11; [115-2] at 2; [115-4] at 2.

11

Defendants dispute these discrepancies by citing to their deposition testimony, in which they state they do not recall the details of the surveillance video and the caller's descriptions. [132] ¶¶ 23–26; 34–37. But at summary judgment, I accept Kelley-Lomax's version of disputed facts. Nevertheless, even assuming the defendants lied and gilded the lily to put the gun in Kelley-Lomax's hands, they are entitled to summary judgment.

"[T]he gravamen of the Fourth Amendment claim for malicious prosecution . . . is the wrongful initiation of charges without probable cause." *Thompson v. Clark*, 596 U.S. 36, 43 (2022). Thus, the independent existence of probable cause defeats any Fourth Amendment malicious prosecution claim. *See Wade v. Collier*, 783 F.3d 1081, 1087 (7th Cir. 2015) (holding that "[p]robable cause is a complete bar to a malicious prosecution claim," notwithstanding evidence that grand jury indictment was based in part on false information).

Kelley-Lomax argues that the United States Supreme Court rejected this defense in *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 367 (2017), when a judicial determination of probable cause is based on fabricated evidence. [126] at 8. This is correct but inapposite to this case. *Manuel* "clarified that the constitutional injury arising from a wrongful pretrial detention rests on the fundamental Fourth Amendment principle that a pretrial detention is a 'seizure'—both *before* formal legal process and *after*—and is justified only on probable cause." *Lewis v. City of Chicago*, 914 F.3d 472, 476–77 (7th Cir. 2019) (citing *Manuel*, 580 U.S. at 367). Manuel alleged that his detention was not supported by probable cause because the judge's order

12

holding him for trial was based only on police fabrications. *Manuel*, 580 U.S. at 368. If that proved to be true, his detention was unreasonable in violation of the Fourth Amendment. *Id.*

Here, even assuming that defendants lied in their reports and testimony, Kelley-Lomax presents no facts that suggest the grand jury finding was based solely on these fabrications. *See Wade,* 783 F.3d at 1087.[4] As discussed above, the officers had probable cause to arrest Kelley-Lomax after finding the gun under his seat, and that evidence was properly presented throughout the initiation and prosecution of the charge. There can be no malicious prosecution claim based on a proper seizure under the Fourth Amendment. *See id.*

Kelley-Lomax's state-law claim for malicious prosecution against the City of Chicago fails for the same reason that his Fourth Amendment claim fails—the officers had probable cause to detain him. *See Young*, 987 F.3d at 646 ("To state a claim for malicious prosecution under Illinois law, a plaintiff must allege that: (1) he was subjected to judicial proceedings; (2) for which there was no probable cause . . . .").

---

[4] Kelley-Lomax's reliance on *Smith v. City of Chicago*, No. 19-2725, 2022 WL 2752603 (7th Cir. July 14, 2022) fails for the same reason. Smith's detention (after a probable-cause hearing) was unreasonable because it was based on illegally seized evidence knowingly tendered by the police. *Smith*, 2022 WL 2752603, at *1. "Legal process had been commenced against the defendant in a way that amounts to an unreasonable seizure under the Fourth Amendment." *Id.* Kelley-Lomax does not challenge the search that resulted in the officers finding the gun under his seat. [126] at 7.

## IV. Conclusion

Defendants' motion for summary judgment, [106], is granted. Enter judgment and terminate civil case.

ENTER:

                                                Manish S. Shah
                                                United States District Judge

Date: September 24, 2024